UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-23114-BLOOM/Louis

HARVEY C. BROOKS, III,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, *et al.*,

    Defendants.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant's Motion for Summary Judgment, ECF No. [51] ("Motion"). Plaintiff Harvey C. Brooks, III ("Plaintiff"), proceeding *pro se*, filed a Response in Opposition, ECF No. [55] ("Response"), to which Defendant filed a Reply, ECF No. [58] ("Reply"). The Court has carefully considered the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

**I.  BACKGROUND**

Plaintiff's Second Amended Complaint asserts claims of employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000d, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ECF No. [41]. Plaintiff is African American male and has been diagnosed with anxiety, adjustment disorder, and post-traumatic stress disorder (PTSD). *Id.* at ¶¶ 12–15. He has filed EEO complaints in 2009, 2010, 2013, 2014, 2016, 2018 (twice), and 2019. *Id.* at ¶¶ 17, 20–22.

Since 2007, Plaintiff has worked as an IT Specialist, at the GS-9 and GS-11 federal pay

scale levels, for the Department of Veterans Affairs ("VA"). *Id.* at ¶ 11. Plaintiff alleges that, on six occasions, his employer discriminated and retaliated against him because of his race, disabilities, or prior EEO activities. *Id.* at ¶¶ 23–28. Specifically, Plaintiff alleges that: (1) since October 25, 2017, Plaintiff's Assistant Area Manager, David Sargent, denied Plaintiff's request for full-time telework; (2) on August 2, 2018, Plaintiff's Area Manager, Anthony Brooks, issued Plaintiff a Letter of Reprimand for disrupting the work environment and for improper use of government equipment; (3) on November 5, 2018, Brooks and Sargent denied Plaintiff's request to attend a virtual Security Plus training, even though similarly situated individuals outside of his protected class were permitted to attend; (4) on March 27, 2019, Brooks "verbally counseled" Plaintiff; (5) on April 23, 2019, Brooks did not promote Plaintiff to a GS-12 position; and (6) on April 29, 2019, Brooks delayed Plaintiff's request for FMLA leave for a month. *Id.*

Plaintiff identifies the following individuals as being treated more favorably: (1) Dennis Rennock (African American), Jarler Martinez (Hispanic), Danny Tenorio (white), Erik Arroyo (Hispanic), and Daniel Lemasters (white). *Id.* at ¶¶ 29–34. Plaintiff alleges that Rennock sent an email regarding a "Go Fund Me Page" and "was not counseled or reprimanded." *Id.* at ¶ 30. Plaintiff further contends that these individuals were promoted to a GS-12 position despite having lesser qualifications. *Id.* at ¶¶ 30–34.

## II.   MATERIAL FACTS

Based on the parties' respective statements of material facts in support of and in opposition to the Motion, along with the evidence in the record, the following facts are not genuinely in dispute, unless otherwise noted.[1]

---

[1] Defendant filed a Statement of Undisputed Facts. ECF No. [50]. Plaintiff's Response, ECF No. [55], does not include an opposing memorandum of law, but is akin to a counterstatement of material facts. Most facts presented by Plaintiff, however, lack a citation to the record, which violates Local Rule 56.1(b)(1)(B) and this Court's Instructions to *Pro Se* Litigants. *See* ECF No. [7] at 1. Finally, because the Response is unverified, it cannot function as a declaration.

Case No. 20-cv-23114-BLOOM/Louis

### A. Plaintiff's Job Duties

Plaintiff testified that he began working for the VA in Miami, Florida, as an IT specialist at the GS-9 level. ECF No. [50-1] at 6–7. In 2010, Plaintiff was promoted to the GS-11 level at a facility in Sunrise, Florida. *Id.* at 6. Two IT Specialists work at Sunrise: Plaintiff and Leonardis Horne. *Id.* at 8.

Plaintiff is responsible for customer support and service, such as "supplying government-furnished equipment [and] IT equipment, that being the computers, laptop, desktops, video teleconferencing, cell phones, software, instructional support, [and] help desk support." *Id.* at 8. Plaintiff admitted that although "[t]he software portions of PCs you can do remotely," "hardware in the essence of repair, you cannot do . . . remotely." *Id.* at 9. Examples of duties that cannot be completed remotely include moving personal computers from one environment to another, performing a physical inventory of IT equipment, and maintaining ethernet cords. *Id.* at 9, 11. Plaintiff and Horne also "handle contractors that come into the building." *Id.* at 8. In addition, there are instances where both Plaintiff and Horne must work on different hardware-related issues simultaneously. *Id.* at 10.

### B. Denied Telework Accommodation

Defendant provided at summary judgment an "Analysis of Essential Functions of IT Specialist," which was produced to Plaintiff in discovery. ECF No. [50-7]. The analysis states that only 20% of Plaintiff's duties—resolving software issues—can be done remotely. *Id.* The rest of the responsibilities— resolving hardware issues, performing system maintenance and repair, physically dealing with hardware, conducting inventory of IT equipment, and maintaining patch cables in IT closets—cannot be done remotely. *Id.*

According to Defendant, Plaintiff's request for telework was denied because "it would remove essential functions from his position and also cause undue hardship to the operation of the

3

unit." ECF No. [50-11] at 2. The written denial explained that Plaintiff and Horne support the main VA facilities in Miami, Sunrise, and five smaller ones near Sunrise. *Id.* Moreover, their duties require them to be "onsite to perform duties daily in a normal environment." *Id.* As such, allowing Plaintiff to work remotely would burden Horne with "80% of the daily duties of [Plaintiff] in addition to his own duties." *Id.*

Plaintiff states in his Response that Defendant "did not proffer as a part of its defense any hardship argument in connection with its failure to provide telework to Plaintiff." ECF No. [55] at 3. Plaintiff also maintains that teleworking allows him to perform his essential functions. *Id.* Plaintiff asserts that IT support is performed remotely "almost all the time," and that he does not recall an instance when he or another IT personnel provided "customer support services in person at the site where the customer is." *Id.* Plaintiff, however, does not provide record citations to support his statements. *Id.*

Plaintiff testified that any IT Specialist could travel from Miami to Sunrise to perform onsite work. ECF No. [50-1] at 9–10. Plaintiff also testified that commuting to Miami would be disruptive to him because, among other issues, the round trip lasts two hours. *Id.* at 16. Plaintiff denied that the reverse trip would also be disruptive to Miami personnel, explaining that there are IT technicians whose job includes traveling. *Id.*

C.   **August 2018 Letter of Reprimand**

Plaintiff testified that in August 2018, Brooks issued him a letter of reprimand because of an email Plaintiff sent from his government email account and work computer to more than 25 union members. ECF No. [50-1] at 25–26. The email "corrected" the union president about an issue of voting procedure. *Id.* at 28–29. Plaintiff described the email as "neutral." *Id.* at 29. The union president complained to management, describing Plaintiff's email as "disgust[ing]" and accusing Plaintiff of being "up to his old behaviors of meddling in Union Business again." ECF

No. [50-10] at 2. Plaintiff testified that Rennock sent group emails about "group parties" and "donations" that violated a policy against fundraising. ECF No. [50-1] at 27, 30. One of the emails concerned a retirement gift for a co-worker. *Id.* at 30.

In his Response, Plaintiff states that he did not "intentionally use[] his work computer," but sent "a routine email that everyone else transmits using the work computer." ECF No. [55] at 7. Plaintiff also contends that Rennock used his work computer to send a group email unrelated to work, *id.* at 8, but Plaintiff does not provide record citations. *Id.* Plaintiff also denies that the union president was "complaining" about his email, as Defendants put it. *Id.* at 8.

When asked what effect the letter of reprimand had on his employment, Plaintiff testified that it was part of his record as a disciplinary action, which was visible when he applied for promotions. ECF No. [50-1] at 35. Plaintiff, however, could not state whether he was denied promotions because of the disciplinary action. *Id.* at 36.

**D.     November 2018 Denial of Security Plus Training**

In August 2018, Plaintiff and four coworkers—Michael Dixson (African American), Randy Bueno (Hispanic), Adrian Bevaun (Haitian or Dominican, according to Plaintiff), and Eric Arroyo (Hispanic)— requested to attend a Security Plus training. ECF Nos. [50-1] at 18; [50-12]. Brooks delegated the confirmation of the training to Sargent, who, because he was in training himself, failed to finalize the Security Plus training. ECF No. [50-1] at 18. Plaintiff contends that persons outside his protected class were later allowed to attend the training, yet fails to cite to the record. ECF No. [55] at 8.

At deposition, Plaintiff admitted that no one was able to attend the training in 2018. ECF No. [50-1] at 17–18. Plaintiff testified that he was placed on a waiting list for Security Plus training but has not received it yet. *Id.* at 19. He learned from discovery that Arroyo attended the training in 2020, while others still had not. *Id.* Plaintiff had "no clue" why he is still on the list, stating that

5

he was "possibly discriminated" against. *Id.*

### E.     March 2019 Verbal Counseling

According to a report completed in March 2019, Plaintiff once approached an employee named Darryl Harden in a "highly agitated," "rude," and "aggressive" manner. ECF No. [50-9]. According to Harden, Plaintiff was also "creating a hostile work environment for all concerned," recruiting employees for EEO cases and making "false allegations." *Id.* When questioned at deposition about this incident, Plaintiff answered that he received a call from Brooks, who made a statement to the effect that Plaintiff perhaps had a bad day. ECF No. [50-1] at 32. Brooks wanted Plaintiff to come into his office "to take some disciplinary action," but Plaintiff refused because Brooks would not provide details about the incident or identify the complainant. *Id.* Plaintiff, however, admitted that he canceled the meeting with Brooks via email by stating that he was "not in the right state of mind." *Id.* at 17, 32–33.

Plaintiff states in his Response that he "remained professional in the face of hostile and impatient customer[s]." ECF No. [55] at 6. But Plaintiff does not cite to the record. *Id.* Moreover, Plaintiff testified that there were times when repeated customer demands caused him to become anxious and agitated and respond in an abrasive manner. ECF No. [50-1] at 30.

### F.     April 2019 Denial of GS-12 Promotion

Plaintiff testified that in April 2019, he applied for a GS-12 promotion that did not allow for telework. ECF No. [50-1] at 21, 43. Plaintiff states in his Response that the GS-12 position simply adds duties related to a security program called CRISP, which may be done remotely. ECF No. [55] at 4. Plaintiff also adds that all GS-12 IT Specialists are currently teleworking. *Id.* But Plaintiff does not support those statements with record citations. *Id.*

Three Supervisory IT Specialists—Robert Torres, Robert McQuaid, and Sargent—provided declarations describing the interview process for the GS-12 promotion. ECF Nos. [50-

2]; [50-3]; [50-13]. A three-person panel graded candidates "using a standardized scoring sheet to grade the answers provided during [a] performance-based interview." ECF Nos. [50-2] at 2; [50-3] at 3; *see* [50-13] at 2–3. "Each answer was rated between 1-10 and notes were provided to substantiate the score provided." ECF Nos. [50-2] at 2; [50-3] at 3. Out of eight candidates, Plaintiff received the second-lowest score. ECF No. [50-6].

Plaintiff submits in the Response that although the scores were objectively compiled, the assessment of the answers was subjective. ECF No. [55] at 4–5. Plaintiff fails to cite to the record for support of this statement. *Id.* Plaintiff testified that he was better qualified than the other candidates and adequately conveyed his qualifications during the interview. ECF No. [50-1] at 22–23. But Plaintiff also testified that two of the persons in his interview panel were the subject of prior EEO complaints, which "added a level of anxiety" and made him "nervous," "flustered," and "unable to communicate." *Id.* at 23. At one point in his deposition, Plaintiff admitted that the added pressure made it possible that he did not provide "an A+ answer" at the interview. *Id.* But at another point, Plaintiff denied that his anxiety affected his answers. *Id.* at 24.

G.     **April 2019 Delayed FMLA Leave**

In April 2019, Plaintiff requested FMLA leave because of his PTSD and anxiety. ECF No. [50-1] at 43. Plaintiff did not recall at deposition if he had asked for specific dates. *Id.* at 44. In his Response, Plaintiff states that he requested FMLA leave on an "intermittent basis," but he does not cite to the record for support. ECF No. [55] at 6. Area Manager Anthony Brooks provided a declaration stating that Plaintiff's "initial request was not properly completed and was not able to be processed as he submitted," but Plaintiff "re-submitted on May 6, 2019 and the request was duly processed on May 8, 2019." ECF No. [50-4]. Plaintiff does not dispute those facts. ECF No.

[55] at 6.[2]

### III.  LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x

---

[2] Finally, Plaintiff attaches to his Response an Investigative Report from one of his EEO Complaints. ECF No. [55-1]. His reasons for doing so are unclear because, at bottom, the report states that Plaintiff's complaints are largely meritless and details how Plaintiff often violated VA procedures. *Id.* However, the Court does not rely on the report to grant summary judgment.

819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343.

In resolving the issues presented under Fed. R. Civ. P. 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356; *see also Aurich v. Sanchez*, No. 08-80113-CIV, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993)). Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

Furthermore, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston*, 9 F.3d at 919; *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *Gary v. Modena*, No. 05-16973, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Fed. R. Civ. P. 56 precludes summary judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so."). Through this lens, the Court considers the Motion.

## IV. DISCUSSION

### A. Rehabilitation Act Claims

"To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that (1) he has a disability, (2) he is otherwise qualified for the position, and (3) he was subjected to unlawful discrimination as a result of his disability." *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017). "An employer unlawfully discriminates against an otherwise qualified person with a disability when it fails to provide a reasonable accommodation for the disability, unless doing so would impose an undue hardship on the employer." *Id.* at 1289. "The plaintiff bears the burden of identifying an accommodation and showing that the accommodation would allow him to perform the essential functions of the job in question." *Id.*

Defining essential functions is case-specific and depends on several factors, such as: "(1) the amount of time spent on the job performing the function; (2) the consequences of not requiring the incumbent to perform the function; (3) the terms of the collective bargaining agreement; (4) the work experience of past incumbents in the job; and (5) the current work experience of incumbents in similar jobs." *Kendall v. Sec'y, Dep't of Veterans Affs.*, 682 F. App'x 761, 765 (11th Cir. 2017). The only record evidence as to what constitutes Plaintiff's essential duties is Defendants' analysis of Plaintiff's job duties. ECF No. [50-7]. In it, and in the denial of Plaintiff's

request to telework, it sets forth that 80% of Plaintiff's duties cannot be performed remotely. ECF No. [50-7]; ECF No. [50-11] at 2.

Plaintiff does not present any evidence to the contrary. Indeed, Plaintiff's testimony is consistent with Defendants' analysis.[3] Plaintiff testified that he is responsible for "supplying government-furnished equipment [and] IT equipment, that being the computers, laptop, desktops, video teleconferencing, cell phones, software, instructional support, [and] help desk support." ECF No. [50-1] at 8. Plaintiff admitted that although "[t]he software portions of PCs you can do remotely," "hardware in the essence of repair, you cannot do . . . remotely." *Id.* at 9. Plaintiff further conceded that he cannot move personal computers, perform a physical inventory, or maintain ethernet cords remotely. *Id.* at 9, 11. Plaintiff also testified that he and Horne "handle contractors that come into the building." *Id.* at 8. And he testified that there are instances where both Plaintiff and Horne must work on different hardware-related issues simultaneously. *Id.* at 10. Allowing Plaintiff's accommodation would burden fellow IT personnel, such as Horne, who would have to perform all in-house work by himself. ECF No. [50-11] at 2.

Although Plaintiff states in the Response that teleworking allows him to perform his essential functions and that IT support is performed remotely "almost all the time," those statements are unsworn, and Plaintiff fails to cite to any record evidence. ECF No. [55] at 3. Likewise, even though Plaintiff states in his Response that the GS-12 promotion simply adds a duty that may be done remotely and that all GS-12 IT Specialists are currently teleworking, ECF No. [55] at 4, those unverified statements have no record support. What is more, Plaintiff testified that the promotion that does not allow telework. ECF No. [50-1] at 43.

---

[3] Notably, Plaintiff does not dispute the paragraph in which Defendant cites to the analysis. *See* ECF No. [55] at 2.

11

Based on the foregoing, summary judgment for Defendant is appropriate on the Rehabilitation Act. *See Kendall*, 682 F. App'x at 766 (affirming summary judgment for employer on Rehabilitation Act claim where plaintiff "did not present evidence contradicting the employer's judgment or evidence about any of the other factors").

### B. Title VII Racial Discrimination Claims

Title VII makes it unlawful for an employer to discriminate against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment, a plaintiff must "present sufficient facts to permit a jury to rule in her favor," which may be accomplished through: (1) "direct evidence of discriminatory intent," (2) "a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination," or (3) "satisfying the burden-shifting framework set out in *McDonnell Douglas*."[4] *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220, 1220 n.6 (11th Cir. 2019). Under *McDonnell Douglas*, "the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Id.* at 1220–21. Then, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. If the defendant succeeds, "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination." *Id.* (internal quotations omitted).

Plaintiff alleges that he received a letter of reprimand, was denied Security Plus training

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

and a promotion, and was delayed FMLA leave because of his race. ECF No. [41] at ¶¶ 24–25, 27. But Plaintiff's claims do not survive summary judgment for several reasons. First, Plaintiff fails to show that the "reprimand caused any serious or material change in [his] employment." *DeBose v. USF Bd. of Trustees*, 811 F. App'x 547, 554 (11th Cir. 2020). Although Plaintiff testified that the disciplinary action would be a part of his record when he applied for promotions, he could not state whether he has been denied a promotion because of the letter. ECF No. [50-1] at 35–36.

Second, Plaintiff fails to show that similarly situated employees outside his class were not reprimanded despite engaging in similar conduct. "[P]laintiff must point to comparators *of a different race* who were 'similarly situated in all material respects' and were not subject to the same mistreatment." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021) (emphasis added). The only person Plaintiff identifies as a comparator, Rennock, is also African American. ECF Nos. [41] at ¶ 29; [50-1] at 27, 30.[5]

Third, regarding the Security Plus training, Plaintiff fails to show that similarly situated employees outside his class were treated more favorably. Plaintiff concedes that the training did not occur because of an oversight by management. *See* ECF No. [50-1] at 18. Plaintiff admitted that no one was able to attend the training in 2018. *Id.* at 17–18. Although Plaintiff states in his Response that persons outside his protected class later participated in the training, he fails to cite to the record in support. ECF No. [55] at 8. At deposition, Plaintiff did identify Arroyo has having received the training after being placed on a waiting list, in which Plaintiff is also listed. ECF No. [50-1] at 19. But Plaintiff conceded that he had "no clue" as to why he has yet to receive training. *Id.* Unsupported speculations of discrimination are insufficient to defeat summary judgment. *See*

---

[5] Plaintiff also failed to show that Rennock "engaged in the same basic conduct or misconduct, [was] subject to the same policy, worked under the same supervisor, and had similar work experience and disciplinary history." *Ziyadat*, 3 F.4th at 1296. However, the Court need not expand on those points because Plaintiff does not set forth a comparator of a different race.

*Coles v. Post Master Gen. United States Postal Servs.*, 711 F. App'x 890, 898 (11th Cir. 2017).

Fourth, assuming Plaintiff showed that he was qualified for a promotion that persons outside his protected class obtained, Defendant has presented a legitimate, nondiscriminatory reason for not promoting Plaintiff: he received the second-lowest score during the standardized performance-based interview attended by all eight candidates. ECF Nos. [50-2] at 2; [50-3] at 3; [50-6]; [50-13] at 2–3. Plaintiff must now "meet the employer's proffered reason head-on and rebut it; the plaintiff cannot succeed by merely disputing the wisdom of the employer's reason." *Wesley v. Austal USA, LLC*, 776 F. App'x 638, 644 (11th Cir. 2019). And "[i]n a qualifications dispute, it is not enough for the plaintiff merely to show that she was better qualified than the person who received the position she sought." *Id.*

Plaintiff fails to show that Defendant's reason is pretextual. Although Plaintiff disagrees with Defendant's assessment of his interview, he does not present any evidence of pretext other than his opinion that he was better qualified than other candidates. *See* ECF No. [50-1] at 22–23. Even taking Plaintiff's assertion that he performed well at the interview, despite admissions that he was probably "nervous," "flustered," and "unable to communicate," *id.* at 23–24, Plaintiff fails to "show that the disparities between the successful applicant's and [his] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Wesley*, 776 F. App'x at 644.

Fifth, Plaintiff admits that his FMLA leave request was delayed because *he* did not specify leave dates. ECF Nos. [50-4]; [55] at 6. There is no evidence that Defendant delayed granting the request because of Plaintiff's race.

Based on the foregoing, Defendant is entitled to summary judgment as to the Title VII racial discrimination claims.

Case No. 20-cv-23114-BLOOM/Louis

### C. Title VII Retaliation Claims

"To make a *prima facie* case of retaliation under Title VII, a plaintiff must first show (1) that she engaged in statutorily protected activity, (2) that she suffered an adverse action, and (3) that the adverse action was causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (internal quotations omitted). A *prima facie* case establishes a presumption of intent to retaliate, which the employer must rebut "by articulating a legitimate, non-discriminatory reason for the employment action." *Id.* at 1135. If the presumption is rebutted, "the plaintiff must then demonstrate that the proffered reason was merely a pretext to mask [retaliatory] actions." *Id.* (internal quotation marks omitted).

To establish causation, "a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Walker v. Sec'y, U.S. Dep't of Air Force*, 518 F. App'x 626, 628 (11th Cir. 2013). "Causation may be inferred by close temporal proximity between the protected conduct and the materially adverse action taken by the employer." *Id.* But absent other evidence, "a three-to-four month time gap between the protected conduct and the adverse employment action is insufficient to establish causation on its own." *Id.* And "temporal proximity by itself generally cannot prove that an employer's proffered reasons are pretextual." *Todd v. Fayette Cty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021).

Plaintiff alleges that, because of his EEO activities, he received a letter of reprimand in August 2018, was denied training in November 2018, was verbally counseled in March 2019, was denied a promotion in April 2019, and was delayed FMLA leave in April 2019. ECF No. [41] at ¶¶ 24–28; *see also* ECF No. [50-1] at 18, 25, 30, 43 (Plaintiff's testimony regarding dates). Pertinent here, after 2016, Plaintiff alleged that he filed EEO complaints in February 2018, September 2018, and June 2019. ECF No. [41] at ¶¶ 19–22.

Except for the November 2018 training, which occurred two months after the September 2018 EEO complaint, there is a gap of more than three months between the alleged adverse action and the proceeding EEO activity: six months between the February 2018 EEO complaint and the August 2018 reprimand, six months between the September 2018 EEO complaint and the March 2019 verbal counseling, and seven months between the September 2018 EEO complaint and the April 2019 denial of promotion and delay of FMLA leave. Plaintiff points to no independent evidence of causation or retaliatory motive. In fact, as shown above, there were nonretaliatory reasons for the letter of reprimand, the cancellation of training, denial of promotion, and delayed FMLA leave. In the same vein, the record shows that Plaintiff received a call from Anthony Brooks not in retaliation for EEO activity, but because of a complaint by another worker that Plaintiff acted rude and aggressive. ECF No. [50-1] at 32; [50-9]. The verbal counseling also does not meet the definition of adverse action. *See Hanley v. Sports Auth.*, 143 F. Supp. 2d 1351, 1357 (S.D. Fla. 2000) (explaining that "courts have held that verbal reprimands and threats of termination do not rise to the level of adverse actions").

Even if Plaintiff met his initial burden, Plaintiff's claims would fail under *McDonnell Douglas* for the same reasons already discussed. *See Walker*, 518 F. App'x at 627 (explaining that "[a] retaliation claim based on circumstantial evidence is analyzed according to the *McDonnell Douglas* framework).

First, Plaintiff was reprimanded because of an email he sent to more than 25 union members about the union president, who complained to management. ECF Nos. [50-1] at 25–26, 28–29; [50-10]. Plaintiff's assertions that the email was "routine" and that the union president did not complain, ECF No. [55] at 7–8, are either unsupported or contradicted by the record. Second, Plaintiff was one of several employees who could not attend Security Plus training because of an oversight by management. *See* ECF No. [50-1] at 17–18. Plaintiff could only speculate as to why

16

he had yet to receive the training. *Id.* at 19. Third, Plaintiff was verbally counseled because a customer complained that Plaintiff acted in a "highly agitated," "rude," and "aggressive" manner, among other issues. ECF No. [50-9]; *see* ECF No. [50-1] at 32. Indeed, Plaintiff testified that there were times when repeated customer demands caused him to become anxious and agitated and respond in an abrasive manner. ECF No. [50-1] at 30. Fourth, Plaintiff was not promoted because he received the second-lowest score during a standardized performance-based interview. ECF Nos. [50-2] at 2; [50-3] at 3; [50-6]; [50-13] at 2–3. Plaintiff does not "meet the employer's proffered reason head-on and rebut it. . . ." *Wesley*, 776 F. App'x at 644. Fifth, Plaintiff admits that he was delayed FMLA leave because his "initial request was not properly completed and was not able to be processed as he submitted." ECF Nos. [50-4]; [55] at 6.[6]

Based on the foregoing, Defendant is entitled to summary judgment as to the Title VII retaliation claims.

### D. Lack of Discovery

Citing to a previously filed Motion to Compel, Plaintiff argues that "the record is not complete for the Court to issue a decision, as Defendant failed to supplement its deficient discovery response." ECF No. [55] at 1. Plaintiff, however, neglects to note that the Magistrate Judge denied Plaintiff's motion to compel because (1) Plaintiff failed to meet and confer, (2) the motion was filed after the discovery cut-off, and (3) the motion was filed more than 30 days after the dispute

---

[6] The *McDonnell Douglas* framework does not apply in mixed-motive retaliation or discrimination cases. *See Davis v. Legal Servs. Alabama, Inc.*, No. 20-12886, 2021 WL 5711043, at *3 n.2 (11th Cir. Dec. 2, 2021) (citing *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1237 (11th Cir. 2016)). In mixed-motive cases, A plaintiff need only present "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action." *Quigg*, 814 F.3d at 1239 (emphasis in original). Plaintiff does not allege or argue that he is asserting a mixed-motive theory. But even if he did, as already discussed, the verbal counseling and letter of reprimand were not adverse employment actions, and Plaintiff presents no evidence sufficient to show that discrimination or retaliation played *any* factor in the adverse employment actions.

arose. ECF No. [54]. In addition, Plaintiff's statement falls well short of the requirements under Federal Rule of Civil Procedure 56(d) to defer ruling on summary judgment. *See Smedley v. Deutsche Bank Tr. Co. Americas*, 676 F. App'x 860, 861 (11th Cir. 2017) ("Under Rule 56(d), where the non-moving party to a motion for summary judgment shows 'by affidavit or declaration' that, for specified reasons, it 'cannot present facts essential to justify its opposition,' the district court may delay consideration of the motion, deny the motion, allow additional time for discovery, or issue another appropriate order."). As such, the alleged lack of discovery does not prevent the Court from determining that summary judgment is warranted.

**V.    CONCLUSION**

1.    Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [51]**, is **GRANTED**.

2.    The above-styled case is **DISMISSED WITH PREJUDICE**;

3.    To the extent not otherwise disposed of, all pending motions are denied as **MOOT** and all deadlines are **TERMINATED**;

4.    The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 3, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Harvey C. Brooks, III
637 NW 99th Terrace
Coral Springs, FL 33071

Email: hcbrooks@att.net